**Reversed and Remanded and Opinion filed December 10, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00530-CV

---

## DALLAS CITY LIMITS PROPERTY CO., L.P., Appellant

## V.

## AUSTIN JOCKEY CLUB, LTD. AND KTAGS DOWNS HOLDING COMPANY, L.L.C, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2010-16733**

---

### O P I N I O N

This interpleader action is but one of multiple lawsuits[1] and administrative proceedings pertaining to ownership of or rights in a racetrack license—a license that is the sole asset of Longhorn Downs, Inc.

---

[1] *See, e.g.*, *Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792 (Tex. App.—Dallas 2012, pet. denied) (the Dallas County litigation).

Appellant Dallas City Limits Property Co., L.P. (Dallas City Limits) challenges the trial court's final judgment ordering the interpled stock in this case delivered to KTAGS Downs Holding Company, L.L.C. and awarding attorney's fees to KTAGS and Austin Jockey Club, Ltd. In five issues, Dallas City Limits asserts that: (1) inasmuch as the judgment in the Dallas County litigation has been reversed, the judgment here arising from res judicata should be reversed; (2) the trial court abused its discretion by refusing to keep this interpleader action abated until final resolution of the Dallas County litigation; (3) the trial court erred in applying principals of res judicata to the Dallas County trial court's take-nothing judgment; (4) the trial court erred in interpreting the Texas Racing Commission's approval of KTAGS as a "potential" transferee of the interplead stock; and (5) the trial court erred in awarding Austin Jockey Club and KTAGS attorney's fees. We conclude that because the trial court's final judgment in this case rests upon a judgment from another case that has since been reversed, the judgment in this cause must likewise be reversed.

## BACKGROUND

In August 2005, Dallas City Limits[2] sought to purchase 100% of the common stock of Longhorn Downs, Inc., a wholly-owned subsidiary of Austin Jockey Club. The only asset of Longhorn Downs was a Class 2 Racetrack License issued by the Texas Racing Commission. To effectuate this purchase, Austin Jockey Club and Dallas City Limits entered into a stock purchase agreement (the DCL Stock Purchase Agreement or the Agreement), which required certain government approvals for the transfer, including the approval of the transfer of the

---

[2] The agreement, dated August 25, 2005, was originally between Austin Jockey Club and Dallas City Limits, LLC. However, the record reflects that the appellant in this case, Dallas City Limits Property Co., was the applicant presented to the Racing Commission by Austin Jockey Club for transfer of the Longhorn Downs stock in September 2009.

2

Longhorn Downs stock by the Racing Commission. Dallas City Limits paid Austin Jockey Club the purchase price of $1.5 million in several non-refundable installments. Both Dallas City Limits and Austin Jockey Club were required to use their reasonable best efforts to effectuate the terms of the Agreement. The parties set no time limit for closing of the DCL Stock Purchase Agreement; however the Agreement did contain a time-is-of-the-essence clause. The Agreement provided that the Longhorn Downs stock would be held in escrow pending closing of the sale, pursuant to an escrow agreement.

Several delays hampered the closing of the DCL Stock Purchase Agreement. But on September 15, 2009, Austin Jockey Club presented Dallas City Limits' application for transfer of the Longhorn Downs stock at a hearing of the Racing Commission. At this hearing, the Commission unanimously voted to deny Dallas City Limits' application, citing various deficiencies in the application. The Racing Commission noted that nothing prevented Dallas City Limits from amending its application and having it resubmitted by Austin Jockey Club at a later hearing.

On November 6, 2009, Austin Jockey Club wrote to Dallas City Limits,[3] stating that it had received a letter dated October 27, 2009, from the Racing Commission, which it previously had forwarded to Dallas City Limits' attorney. According to this October 27th letter, the Racing Commission had provided Austin Jockey Club until November 6, 2009, to:

- Have a request to establish a racetrack location with any needed updated information on the racetrack facility;
- Provide a general description of the proposed business model to be used by Austin Jockey Club, including plans for pre-opening simulcasting; and

_____

[3] This letter was addressed to Dallas City Limits LLC, its successor Dallas City Limits, LP, a Texas limited partnership, and its assignee, Dallas City Limits Operating Co., Ltd., the appellant in this case.

3

- Provide a timeline with dates for completing planning, developing, and construction of the racetrack facility. The timeline was to identify a realistic schedule for building the facilities and collecting purse revenue in time to conduct live racing on July 29, 2011. The schedule was to include sufficient time for Racing Commission personnel review and approval.

Austin Jockey Club stated in its November 6th letter to Dallas City Limits that it had "previously demanded" that Dallas City Limits "cure all defaults" by 3:00 p.m. on November 5, 2009. The Club declared in this letter that, because Dallas City Limits had failed to timely provide the Club information required by the Racing Commission, Dallas City Limits was in breach of the DCL Stock Purchase Agreement. Austin Jockey Club further stated that if it "did not take immediate and responsive corrective action to mitigate its damages and respond appropriately to the Texas Racing Commission, the Racing Commission would proceed to revoke" the Longhorn Downs racing license. The Club explained that, due to Dallas City Limits' "repeated failures" to "accomplish the fundamental tasks necessary to both effect a transfer of the ownership of and preserve the License since it undertook that obligation on August 25, 2005," Austin Jockey Club was entitled to terminate the Agreement. In this letter, the Club notified Dallas City Limits that the DCL Stock Purchase Agreement was terminated and demanded that Dallas City Limits "execute all directives necessary to release the Longhorn Downs common stock from escrow and return it to Austin Jockey Club."

That same day, Austin Jockey Club entered into a second stock purchase agreement with KTAGS Downs Holding Company, LLC (the KTAGS Agreement) purporting to transfer the Longhorn Downs stock to KTAGS for the purchase price of $100.00. The KTAGS Agreement specifically stated that Dallas City Limits claimed to have continuing rights under the DCL Stock Purchase Agreement and refused to consent to the release of the Longhorn Downs stock from escrow. The KTAGS Agreement further provided, "The rights granted in this instrument are

4

subject to any rights, if any [sic], which may remain in Dallas City Limits or its successors" pursuant to the DCL Stock Purchase Agreement.

This impasse spawned two lawsuits. In November 2009, Dallas City Limits sued Austin Jockey Club for breach of the DCL Stock Purchase Agreement in the 160th District Court in Dallas County (the Dallas County litigation). Austin Jockey Club counterclaimed, asserting that Dallas City Limits had breached the Agreement, which justified its termination. Then, on March 15, 2010, the escrow agent holding the Longhorn Downs stock, Crady, Jewett & McCulley, L.L.P., filed this interpleader action in Harris County, pursuant to the terms of the escrow agreement between Austin Jockey Club and Dallas City Limits.

The trial court originally abated this action because the parties' rights to the interpled stock would be determined in the previously filed Dallas County litigation. Following a trial in the Dallas County litigation, a jury found that Austin Jockey Club had breached the DCL Stock Purchase Agreement and that Dallas City Limits had not breached the Agreement. The trial court's judgment in the Dallas litigation signed January 4, 2011, however, reflects that, after hearing various motions and responses and considering the jury's verdict, the trial court determined that "a take nothing judgment should be entered as to all claims and all parties." Both parties appealed the judgment.

While the appeal was pending before the Dallas Court of Appeals, Austin Jockey Club sought to lift the abatement of this interpleader action, arguing that abatement was no longer necessary as the Dallas County litigation resolved the parties' rights. Austin Jockey Club also sought summary judgment against Dallas City Limits on two grounds: (1) the take-nothing judgment in the Dallas County litigation meant the DCL Stock Purchase Agreement was terminated and Austin Jockey Club was therefore entitled to possession of the Longhorn Downs stock in

5

the registry of the court under principals of res judicata; and (2) the Racing Commission's denial of Dallas City Limits' application for transfer of the Longhorn Downs stock meant that "releasing the stock to [Dallas City Limits] would be illegal." On June 17, 2011, the trial court granted both Austin Jockey Club's motion to lift the abatement and its motion for summary judgment against Dallas City Limits. The trial court subsequently entered a series of orders relating to the interpled stock and severance of parties,[4] but ultimately reconsolidated the principal parties, including Austin Jockey Club and Dallas City Limits, and their claims remaining after summary judgment.

KTAGS intervened in this action on October 31, 2011, asserting a claim for declaratory relief that (a) Dallas City Limits has no right, title or interest whatsoever in the stock of Longhorn Downs or the racetrack license held by it; (b) the KTAGS Agreement is the only valid agreement related to the purchase of the Longhorn Downs stock; (c) pursuant to this agreement, KTAGS is entitled to receive the Longhorn Downs stock; and (d) pursuant to this agreement, Austin Jockey Club is bound to deliver the Longhorn Downs stock to KTAGS. Meanwhile, Austin Jockey Club presented KTAGS' application to transfer ownership of the stock to the Racing Commission at a meeting on February 7, 2012. The Racing Commission unanimously approved a 100% change of ownership of Longhorn Downs to KTAGS.

Because the Dallas County litigation remained on appeal, Dallas City Limits renewed its request to abate this case pending final resolution of that appeal. The trial court denied the request and called the remaining matters for trial.

---

[4] The order on summary judgment purported to be a final judgment, but it was not. Therefore, the trial court signed an amended order granting summary judgment, noting the interlocutory nature of the relief. The trial court then granted a severance, but later ordered a reconsolidation. The trial court also entered orders releasing the stock from its registry, but then ordered it retendered.

6

The trial court conducted a bench trial on May 8, 2012, signed a final judgment on May 24, 2012, and an amended final judgment on June 8 in favor of Austin Jockey Club and KTAGS. This judgment provides, in pertinent part:

> On May 8, 2012, the above cause came on for non-jury trial on *the remaining claims* in this suit, including the declaratory judgment actions of Austin Jockey Club, Ltd. and KTAGS Downs Holding Company, LLC. . . .
>
> The Court then heard the evidence adduced by the parties and the arguments of counsel. Having heard the arguments of counsel, the Court finds and determines that Austin Jockey Club . . . and KTAGS . . . are entitled to the declaratory relief sought in their trial pleadings. The Court accordingly makes the following findings of fact and conclusions of law and declarations, and awards the following relief:[]
>
> 1. The Texas Racing Commission has exclusive jurisdiction over horse racing licenses in the State of Texas and has exclusive jurisdiction over the transfer of ownership of the horse racing license owned by Longhorn Downs, Inc.
>
> 2. The racing license held by Longhorn Downs, Inc. is non-transferable. The only means for transferring the benefits of the racing license is the transfer of the stock of Longhorn Downs, Inc.
>
> 3. Because the Texas Racing Commission has exclusive jurisdiction over the transfer of the ownership of Longhorn Downs, Inc., the stock of Longhorn Downs, Inc. cannot be transferred absent the Texas Racing Commission's approval.
>
> 4. On September 15, 2009, the Texas Racing Commission denied the request of Austin Jockey Club to transfer the stock of Longhorn Downs, Inc. to Dallas City Limits, and accordingly, Dallas City Limits cannot lawfully own the stock of Longhorn Downs, Inc.
>
> 5. On February 7, 2012, the Texas Racing Commission approved the request of Austin Jockey Club to transfer the stock of Longhorn Downs, Inc. from Austin Jockey Club to KTAGS.
>
> * * *

7

7. While the Texas Racing Commission has exclusive jurisdiction over the substantive issue of ownership of the racing license, the Texas Racing Commission has no mechanism for enforcing its substantive determination under the facts of this case. The Texas Racing Commission must rely on this Court to require the Clerk of this Court to release the stock in order to effectuate its substantive determination.

8. The Court declares that the [DCL] Stock Purchase Agreement was terminated on November 6, 2009. Further, the Court declares that the Stock Purchase Agreement did not continue after November 6, 2009.

9. The Court has jurisdiction to award relief that effectuates the substantive determinations of the Texas Racing Commission in situations where the Commission has approved a request to transfer stock, as the Commission did here on February 7, 2012. Accordingly, this Court has jurisdiction to enter orders as required to effectuate the decisions of the Texas Racing Commission.

10. In order to effectuate the substantive determination of the Texas Racing Commission, the Court therefore orders that:

   a. Daniel F. Patton of Munsch, Hardt, Kopf & Harr, P.C., 700 Louisiana Street, Suite 4600, Houston, Texas is hereby appointed Master in Chancery in this proceeding. Mr. Patton's only duty in this matter is to deliver the stock of Longhorn Downs, Inc. from the registry of this court to KTAGS to fully effectuate the substantive determination of the Texas Racing Commission.

   b. The Clerk is ORDERED to immediately deliver a certified copy of this Amended Final Judgment to the Master, Daniel Patton; and

   c. Upon receipt of the stock of Longhorn Downs, Inc. and a certified copy of this Amended Final Judgment, the Master Daniel Patton is ORDERED to deliver the stock of Longhorn Downs, Inc. to KTAGS's corporate representative at 3:00 P.M. on Tuesday, June 12, 2012.[5]

---

[5] The trial court also awarded trial and conditional appellate fees to both Austin Jockey Club and KTAGS.

8

(emphasis added).

Dallas City Limits perfected its appeal on June 5, 2012. The statements excerpted above were incorporated verbatim into findings of fact and conclusions of law signed by the trial court on July 10, after Dallas City Limits filed a notice of past due findings and conclusions. On July 11, 2012, the Dallas Court of Appeals issued an opinion in the Dallas County Litigation reversing and remanding the Dallas County trial court's take-nothing judgment. *See Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792, 794–95 (Tex. App.—Dallas 2012, pet. denied).

### EFFECT OF THE DALLAS COURT OF APPEALS' DECISION

In Dallas City Limits' first issue, it asserts that the decision of the Dallas Court of Appeals, reversing and remanding the Dallas County district court's take-nothing judgment, requires reversal of the summary judgment and final judgment below because these judgments were based entirely on the alleged res judicata effect of the Dallas County court's judgment.

The Texas Supreme Court has explained that "[a] judgment in a second case based on the preclusive effects of a prior judgment should not stand if the first judgment is reversed." *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986); *see also* Restatement (Second) of Judgments § 16 (1982) ("A judgment based on an earlier judgment is not nullified automatically by reason of the setting aside, or reversal on appeal, or other nullification of that earlier judgment; but the later judgment may be set aside, in appropriate proceedings, with provision of any suitable restitution of benefits received under it."). Comment (c) to the Restatement provides that, if the later judgment is on appeal and remains undecided, "a party may inform the trial or appellate court of the nullification of

9

the earlier judgment and the consequent elimination of the basis for the later judgment. The court should then normally set aside the later judgment." Restatement (Second) of Judgments § 16 cmt. (c) (1982); *see also Watson v. Houston Indep. Sch. Dist.*, No. 01-04-01116-CV, 2005 WL 3315254, at \*1–2 (Tex. App.—Houston [1st Dist.] Dec. 8, 2005, no pet.) (mem. op.) ("Because the earlier judgment, on which HISD relies, has been reversed, the summary judgment rendered against [Watson] cannot stand."). The parties agree that the prior judgment of the Dallas trial court was reversed by the Dallas Court of Appeals. Dallas City Limits urges that such reversal is dispositive of this cause. Austin Jockey Club and KTAGS disagree.

## A. The Trial Court's Judgments Were Based on the Dallas County Litigation

We first address the argument of Austin Jockey Club and KTAGS that the Dallas Court of Appeals' decision reversing and remanding the Dallas County trial court's take-nothing judgment has no impact on the trial court's judgments in this case. Austin Jockey Club and KTAGS urge that inasmuch as specific performance will never be available to Dallas City Limits in the Dallas County litigation, summary judgment is proper against Dallas City Limits in this interpleader action.

Austin Jockey Club's and KTAGS' argument is rooted in Dallas City Limits' asserted failure to appeal the Dallas County trial court's denial of its requested remedy of specific performance. But in the appeal of the Dallas County litigation, Dallas City Limits contended the trial court erred (1) by refusing to allow a requested trial amendment that Austin Jockey Club's termination of the Dallas City Limits Agreement was wrongful and ineffective and (2) by failing to award Dallas City Limits the remedy of specific performance. *Dallas City Limits Prop. Co.*, 376 S.W.3d at 794–95. In its conditional cross-appeal, Austin Jockey Club challenged the trial court's denial of its motion for judgment notwithstanding

10

the verdict on two grounds: (1) that there was insufficient evidence to support the jury's finding that Dallas City Limits did not breach the Agreement and (2) that there was insufficient evidence to support the jury's finding that Austin Jockey Club did breach the Agreement.

The Dallas Court of Appeals reversed the trial court, concluding that Dallas City Limits' requested trial amendment was mandatory. *See id.* at 798–99. But because Dallas City Limits sought the trial amendment after the close of evidence, the Court of Appeals remanded to the trial court with instructions to allow the trial amendment pleading for declaratory relief and to sign a new judgment based on the jury's findings in light of the amendment.[6] *Id.* at 799. Because of its resolution of this issue, the Dallas Court of Appeals did not address Dallas City Limits' issue regarding specific performance. *Id.*

Moreover, Austin Jockey Club did not seek summary judgment in this case on the basis that Dallas City Limits is not entitled to specific performance. We cannot entertain this new basis for summary judgment on appeal. *See Fed. Deposit Ins. Corp. v. Link*, 361 S.W.3d 602, 609 (Tex. 2012) ("It is settled that '[a] court cannot grant summary judgment on grounds that were not presented.'" (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).[7]

---

[6] We note from an informal submission by Dallas City Limits that the Dallas trial court has now entered an amended final judgment declaring that "Austin Jockey Club, Ltd. termination of the Stock Purchase Agreement was wrongful and ineffective." The final judgment does not award specific performance. We have no information regarding an appeal from that judgment.

[7] *See also* Tex. R. Civ. P. 166a(c) (instructing that a "motion for summary judgment shall state the specific grounds therefor"); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[A] motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion.").

11

**B. Reversal of the Dallas County Litigation Requires Reversal of the Trial Court's Judgments**

We now turn to Dallas City Limits' first issue and address whether the reversal of the Dallas County trial court's take-nothing judgment necessitates a reversal of the trial court's summary judgment and final judgment in this case. Because the trial court did not specify the basis for the summary judgment, we look to the motion to determine the possible grounds for it.[8]

In its motion, Austin Jockey Club asserted it was entitled to release of the interpled stock on two grounds: (1) summary judgment against Dallas City Limits is appropriate because of the res judicata effect of the Dallas County trial court's take-nothing judgment against Dallas City Limits; and (2) summary judgment is appropriate because releasing the stock to Dallas City Limits would be illegal where, as here, the Racing Commission has "unequivocally denied" Dallas City Limits' application for transfer of the stock and racing license.

The first ground for summary judgment is explicitly tied to the Dallas County trial court's take-nothing judgment, which was reversed on appeal and thus has been eliminated as a ground for summary judgment. *See Scurlock Oil Co.*, 724 S.W.2d at 6; *Watson*, 2005 WL 3315254, at *2. The second ground is also entirely dependent upon the take-nothing judgment and Austin Jockey Club's interpretation of the meaning of that judgment. Specifically, by its second ground Austin Jockey Club urged that releasing the stock to Dallas City Limits would be illegal because Dallas City Limits was not approved by the Racing Commission.

Austin Jockey Club reasons that Dallas City Limits was not approved by the Racing Commission, did not appeal that decision, and can never be approved

---

[8] *See* Tex. R. Civ. P. 166a(c). We do so notwithstanding the trial court's statement on the record that res judicata formed the sole basis for its decision to grant summary judgment.

12

because the DCL Stock Purchase Agreement is terminated; thus, it would be illegal to transfer the stock to a party who cannot ever be approved. In short, Austin Jockey Club's argument rests upon the premise that the take-nothing judgment meant the DCL Stock Purchase Agreement was dead and with it died Dallas City Limits' chances of being approved by the Racing Commission. Even if the take-nothing judgment actually meant the DCL Stock Purchase Agreement was terminated, that judgment no longer exists. Neither the Racing Commission's "unequivocal denial" of Dallas City Limits' initial application—*which explicitly invited a cure*—nor the DCL Stock Purchase Agreement itself forecloses subsequent application.[9] Thus, this record will not support an as-a-matter-of-law determination that transfer of the stock to Dallas City Limits would be illegal.

As such, the trial court's summary judgment cannot rest upon the second urged ground. We thus conclude that both grounds asserted for summary judgment have been eliminated by reversal of the Dallas County district court's take-nothing judgment. *See Scurlock Oil Co.*, 724 S.W.2d at 6; *Watson*, 2005 WL 3315254, at *2.

---

[9] Amicus curiae Texas Racing Commission urges this Court to affirm the judgment of the trial court in recognition of the Racing Commission's exclusive jurisdiction. As noted above, the trial court entered a finding that the Texas Racing Commission has exclusive jurisdiction over horse racing licenses in the State of Texas and has exclusive jurisdiction over the transfer of ownership of the horse racing license owned by Longhorn Downs, Inc. This finding post-dates the trial court's order granting summary judgment against Dallas City Limits. The Racing Commission's exclusive jurisdiction over licenses was not a basis for Austin Jockey Club's motion for summary judgment. As such, even if the Racing Commission's exclusive jurisdiction is somehow dispositive of the issues in this or the Dallas County litigation, it cannot be dispositive for the first time on appeal. Moreover, the Dallas Court of Appeals suggests that the Racing Commission's jurisdiction over licenses "has no direct bearing on [Dallas City Limits]'s contractual right to purchase the Stock." *Dallas City Limits Prop. Co., L.P.*, 376 S.W.3d at 796. Nothing in the Racing Commission's approval of the stock transfer to KTAGS purports to supersede the parties' respective contract rights or indicates that the Commission will no longer consider an application for approval of a stock transfer to Dallas City Limits. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 6.13(b) ("Each transaction that involves an acquisition or a transfer of a pecuniary interest in the association must receive prior approval from the commission.").

Turning to the trial court's final judgment, appellees and amicus curiae, the Texas Racing Commission, urge this court to disregard the summary judgment and look solely to the final judgment as a basis to affirm. We are, however, unable to isolate the trial court's final judgment from the error we find in the summary judgment because even the final judgment was based on the preclusive effects of the Dallas County litigation. First, we emphasize that it is undisputed that, on this record, Dallas City Limits' competing claim to the stock in the interpleader action was adjudicated on summary judgment before KTAGS had any colorable claim to the stock and before the Racing Commission approved KTAGS application. Thus, when the trial court called *the remaining claims* for bench trial, Dallas City Limits had no burden to establish its right to the stock—it had already lost, so it was no longer a claimant. The fact that Austin Jockey Club or KTAGS or the Racing Commission as a nonparty might have provided the trial court with an additional reason Dallas City Limits could have lost is of no moment; Dallas City Limits couldn't lose on the merits of its claim again. Summary judgments may not be bolstered, after the fact, on grounds not presented in the motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Second, according to its live pleadings at the time of the bench trial, Austin Jockey Club sought a declaration

> that the take-nothing judgment in Dallas County was a final judgment for purposes of res judicata, that the [Dallas City Limits Agreement] is terminated, that Austin Jockey Club is not in breach of the [Dallas City Limits Agreement] by engaging in negotiations to sell the capital stock of Longhorn Downs, Inc. to someone other than Dallas City Limits, and that Austin Jockey Club, which has been given possession of the capital stock of Longhorn Downs, Inc. is free to sell, transfer, assign, or encumber the capital stock of Longhorn Downs, Inc.

14

All of these requested declarations are either intimately tied to the Dallas County litigation or to the trial court's prior summary judgment, which was based on the Dallas County litigation. Moreover, at the time Austin Jockey Club sought these declarations and at the time the trial court conducted a bench trial on *the remaining claims*, Dallas City Limits' claim to the interpled stock had been adjudicated. Accordingly, the declarations the trial court made in favor of Austin Jockey Club as well as the final judgment in favor of Austin Jockey Club and KTAGS were dependent upon the preclusive effect of the Dallas County trial court's take-nothing judgment, which has been reversed on appeal. *See Scurlock Oil Co.*, 724 S.W.2d at 6; *Watson*, 2005 WL 3315254, at *2.

We conclude that the summary judgment and final judgment in this case are based on the preclusive effect of the Dallas County court's judgment. This judgment has been reversed on appeal. We therefore conclude that the judgment in this case should likewise be reversed in its entirety. *See Scurlock Oil Co.*, 724 S.W.2d at 6; *Watson*, 2005 WL 3315254, at *2. We sustain Dallas City Limits' first issue.

## CONCLUSION

Because we have sustained Dallas City Limits' first issue, our appellate rules forbid an advisory opinion on the remaining issues unnecessary to this disposition,

including abatement.  *See* Tex. R. App. P. 47.1.  Having sustained Dallas City Limits' first issue, we reverse and remand for proceedings consistent with this opinion.


/s/    Sharon McCally
       Justice


Panel consists of Justices McCally, Busby, and Donovan.