**AFFIRM, and Opinion Filed June 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00114-CV

### AUSTIN JOCKEY CLUB, LTD., Appellant
### V.
### DALLAS CITY LIMITS PROPERTY CO., L.P., Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-11846**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

In two issues, appellant Austin Jockey Club, Ltd. (AJC) contends the trial court erred by granting a declaratory judgment that AJC's termination of a stock purchase agreement with appellee Dallas City Limits Property Co., L.P. (DCL) was wrongful and ineffective and by awarding attorney's fees to DCL. We affirm the trial court's judgment.

### Factual Background

In August 2005, Longhorn Downs, Inc. was a wholly owned subsidiary of AJC. The sole asset of Longhorn Downs was a Class 2 Racetrack License for horse racing (the License) issued by the Texas Racing Commission (the Racing Commission). DCL entered into a Stock Purchase Agreement (the DCL Agreement) to purchase all of the capital stock of Longhorn Downs (the

Stock) from AJC.[1] DCL paid AJC the purchase price of $1,500,000 for the Stock, and the Stock was placed in an escrow account. A party wishing to hold and operate under a racetrack license in Texas must have the approval of the Racing Commission, and the DCL Agreement required, *inter alia,* approval by the Racing Commission of transfer of ownership of the Stock.[2] The DCL Agreement required that DCL use its reasonable best efforts to obtain Racing Commission approval of transfer of ownership of the Stock, and it also required that AJC use its reasonable best efforts to assist DCL in obtaining that approval.

The parties initially thought the transfer of ownership of the Stock could be accomplished in approximately one year. However, DCL encountered a number of difficulties during the process of applying for Racing Commission approval of the transfer, including obtaining an appropriate site for the prospective racetrack. When DCL procured an option to purchase a suitable property, AJC requested that the Racing Commission place DCL's application for approval of transfer of ownership of the Stock on its agenda for decision. During the time required for DCL's application to come before the Racing Commission, however, DCL lost its option on that property.[3] When the application was evaluated by the Racing Commission at a September 15, 2009 hearing, it was denied. DCL understood it would have the opportunity to reapply for approval. *Dallas City Limits Prop., Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792, 795 (Tex. App.—Dallas 2012, pet. denied) (*Dallas City Limits I*). Indeed, the Racing Commission noted in its denial that nothing prevented DCL from amending its application and having it resubmitted by AJC at a later time. *Dallas City Limits Prop. Co., L.P.*

---

[1] The Agreement was actually signed by DCL's predecessor, Dallas City Limits, LLC, which subsequently assigned its rights under the Agreement to DCL. We refer to DCL as the contracting party.

[2] A racetrack license issued by the Racing Commission is not transferable. However, the capital stock of a licensee may be acquired with prior approval of the Racing Commission. An individual, corporation, or unincorporated business association seeking to purchase the capital stock of a licensee must submit for Racing Commission review information prescribed by statute relating to the purchaser's qualifications to hold a racetrack license. TEX. REV. CIV. STAT. ANN. art. 179e §§ 6.06, 6.12, 6.13(b) (West Supp. 2014).

[3] DCL offered evidence its application to the Racing Commission was complete in October 2008. However, the hearing was not held until September 2009.

–2–

*v. Austin Jockey Club, Ltd.*, 418 S.W.3d 727, 729 (Tex. App.—Houston [14th Dist.] 2013, pets. denied) (*Dallas City Limits II*). But by letter dated November 6, 2009, AJC notified DCL that, due to DCL's "repeated failures" to "accomplish the fundamental tasks necessary to both effect a transfer of the ownership of and preserve the License since it undertook that obligation," AJC was entitled to terminate the DCL Agreement. In that letter, AJC notified DCL that the DCL Agreement was terminated. The same day, AJC and KTAGS Downs Holding Company, LLC (KTAGS) entered into a stock purchase agreement (the KTAGS Agreement) for purchase of the Stock. At a February 7, 2012 meeting of the Racing Commission, AJC presented KTAGS's application for transfer of ownership of the Stock, and the application was approved. *Dallas City Limits II*, 418 S.W.3d at 731.

### Procedural Background

DCL sued AJC, and AJC counterclaimed against DCL. A jury found AJC had breached the DCL Agreement but DCL had not. The jury also found that (1) DCL had made a negligent misrepresentation to AJC, but (2) AJC had unreasonably delayed in asserting its rights on that basis and DCL had acted to its detriment in reliance on AJC's delay, and (3) AJC was entitled to $0 as compensation for the misrepresentation. The trial court entered a take-nothing judgment against both parties.

DCL appealed the take-nothing judgment, contending the trial court erred by refusing to allow a requested trial amendment and by failing to award DCL the remedy of specific performance. AJC conditionally cross-appealed, challenging the trial court's denial of its motion for judgment notwithstanding the verdict and the trial court's submission of DCL's requested jury issue on laches. We reversed the trial court's judgment and remanded the case with instructions to the trial court to:

–3–

(1) allow DCL's trial amendment seeking a declaratory judgment on the issue:

> Austin Jockey Club's termination of the Stock Purchase Agreement was wrongful and ineffective[;]

(2) enter judgment on the jury's verdict in light of that trial amendment; and

(3) make whatever award of attorney's fees is appropriate.

*Dallas City Limits I*, 376 S.W.3d at 802.[4]

Following remand, the trial court signed an order granting DCL leave to file a trial amendment of its Third Amended Petition, its live pleading at trial. DCL amended its pleading to add a cause of action seeking a declaratory judgment on the issue of whether AJC's termination of the DCL Agreement was wrongful and ineffective. The trial court signed an amended final judgment in which it granted DCL declaratory judgment that AJC's termination of the DCL Agreement was wrongful and ineffective and granted judgment to DCL for its attorney's fees in the amount of $650,000. The trial court granted AJC a take-nothing judgment as to all remaining claims brought by DCL and granted DCL a take-nothing judgment as to all claims brought by AJC.

AJC filed this appeal. In two issues, AJC asserts the trial court erred by granting a declaratory judgment that AJC's termination of the DCL Agreement was wrongful and ineffective and by awarding DCL attorney's fees.

## Declaratory Judgment

In its first issue, AJC contends that the trial court erred by granting a declaratory judgment that AJC's termination of the DCL Agreement was wrongful and ineffective. AJC argues the evidence is legally and factually insufficient to support the trial court's declaratory judgment and the jury findings upon which it is based; AJC's obligations under the DCL

---

[4] The relationship between these parties has spawned a number of additional suits and administrative proceedings in forums across the State. We address those proceedings only when necessary to resolve the appeal before us.

–4–

Agreement are discharged due to failure of a condition precedent, Racing Commission approval of transfer of ownership of the Stock to DCL; and DCL did not successfully challenge the decisions of the Racing Commission which retained exclusive jurisdiction over the racetrack license.

*Standard of Review*

We review orders, judgments, and decrees under the Uniform Declaratory Judgments Act (UDJA) in accordance with the same standards we apply to other orders, judgments, and decrees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2015); *Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 820 (Tex. App.—Dallas 2007, pet. denied). We review the trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied). Conclusions of law may not be reversed unless they are erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

*Legal and Factual Sufficiency of the Evidence*

We first address AJC's argument that the evidence is legally and factually insufficient to support the trial court's declaration and the jury's findings upon which it is based. AJC specifically contends the trial court should have disregarded the jury's finding that DCL did not breach the DCL Agreement. AJC acknowledges this Court "addressed the evidentiary sufficiency issues in cross-points in the first appeal," *see Dallas City Limits I*, 376 S.W.3d at 799-801 (evidence supported jury's failure to find a breach by DCL of the DCL Agreement and jury's finding of breach by AJC of the DCL Agreement), but "re-asserts the arguments in the alternative here." We reject this argument and decline to revisit AJC's sufficiency of the

–5–

evidence complaint. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) (questions of law decided on appeal to a court of last resort govern the case throughout its subsequent stages). In *Dallas City Limits I*, we concluded that "the evidence was sufficient to support the jury's finding that DCL did not breach the [DCL] Agreement" and that "there is more than a scintilla of evidence supporting the jury's finding that AJC breached the [DCL] Agreement." *Dallas City Limits I*, 376 S.W.3d at 800. We remanded the case to the trial court with instructions to allow DCL's trial amendment seeking a declaratory judgment and to enter judgment on the jury's verdict in light of the trial amendment; no new evidence was necessary or presented on remand. The trial court's declaratory judgment that AJC's termination of the DCL Agreement was wrongful and ineffective is consistent with the jury's findings that DCL did not breach the DCL Agreement and AJC did breach the DCL Agreement. *See Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. denied) (landlord could not base a forfeiture on breach of an obligation that does not exist in the lease).

### Condition Precedent

AJC next argues that because Racing Commission approval was a condition precedent to transfer of ownership of the Stock to DCL, ACL's obligations under the DCL Agreement were discharged by the absence of the condition precedent and, accordingly, its notification of the termination of the DCL Agreement was neither wrongful nor ineffective. In support of this argument, AJC contends that the Racing Commission's denial of DCL's application and subsequent approval of sale of the Stock to KTAGS "invalidated the attempted transfer of the Stock to DCL and "make[s] transfer of the [S]tock impossible."

We question whether this complaint was raised either in the trial court or in connection with the prior appeal. "Throughout trial, AJC had maintained the same request for declaratory relief, i.e., it sought specific resolution of the question of whether a purported breach of the

–6–

[DCL] Agreement by DCL justified AJC's termination of the [DCL] Agreement." *Dallas City Limits I*, 376 S.W.3d at 797-98. Even after AJC non-suited its claim for declaratory relief, it "continued to assert its claim that DCL breached the [DCL] Agreement by failing to use its best efforts to obtain the Racing Commission's approval" of transfer of ownership of the Stock. *Id.* at 798. This claim was AJC's "consistent justification" for terminating the DCL Agreement: "AJC's live pleading included this allegation; AJC offered testimony throughout trial in an effort to prove such a breach; and AJC requested submission of the purported breach by DCL to the jury." *Id.* This Court upheld the jury's finding that DCL had not breached the DCL Agreement. *Id.* at 800. In response to DCL's complaint in the prior appeal that the trial court erred by failing to award it the remedy of specific performance of the DCL Agreement, AJC asserted DCL was not entitled to that remedy because the condition precedent of Racing Commission approval of the transaction had not occurred and, therefore, AJC could not specifically perform the contract. However, AJC did not argue at trial or in the prior appeal that a failure of a condition precedent excused its performance under the DCL Agreement. Instead, AJC argued that failure to obtain Racing Commission approval of the transfer of the Stock was a breach of the DCL Agreement. *Id.* at 796 ("In short, AJC pleaded for a declaration that its termination of the [DCL] Agreement was justified when DCL breached the [DCL] Agreement by failing to obtain the approval of the Racing Commission.").

Assuming, however, that AJC's failure of a condition precedent argument is properly before us on appeal, we are unpersuaded by the argument. AJC is correct that the Racing Commission must provide prior approval of a transaction that involves the acquisition or transfer of a pecuniary interest in a licensee. TEX. REV. CIV. STAT. ANN. art. 179(e) § 6.13(b). In recognition of applicable law, the DCL Agreement provides the Stock will not be transferred to DCL until approval of the Racing Commission has been obtained. However, DCL contends the

DCL Agreement remains an executory contract because the time for satisfaction of the relevant condition, Racing Commission approval of the transaction, has not yet expired.[5] When the Racing Commission denied DCL's application for transfer of ownership of the Stock, it explicitly noted that nothing prevented DCL from amending its application and having it resubmitted for consideration at a later hearing. *See Dallas City Limits I*, 376 S.W.3d at 795 ("DCL understood it would have the opportunity to reapply for [Racing Commission] approval."); *see also Dallas City Limits II*, 418 S.W.3d at 729.

It is noteworthy that AJC does not affirmatively contend DCL is precluded from reapplying for Racing Commission approval of transfer of ownership of the Stock. Instead, AJC asserts the Racing Commission approval of the sale of the Stock to KTAGS renders sale of the Stock to DCL "impossible". But belying this argument is the KTAGS Agreement itself which "specifically stated that [DCL] claimed to have continuing rights under the [DCL Agreement] and refused to consent to the release of the [Stock] from escrow." *Dallas City Limits II*, 418 S.W.3d at 730. Further, the KTAGS Agreement provided, "The rights granted in this instrument are subject to any rights, if any [sic], which may remain in [DCL] or its successors" pursuant to the DCL Agreement. *Id.*

At trial, the jury was instructed that AJC's failure to comply with the DCL Agreement was excused if DCL previously failed to comply with a material obligation of the DCL Agreement that was not excused. The jury found that AJC's failure to comply with the DCL

---

[5] DCL argues that not only does it have the ability to reapply to the Racing Commission for approval of transfer of ownership of the Stock, it also has the valuable contractual right under the DCL Agreement to "sell its interest to a third party." The DCL Agreement provides:

> *Section 9.3  Assignability.*  This Agreement shall be binding upon, and shall be enforceable by and inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors and assigns; provided, however, that this Agreement may not be assigned (except by operation of law) by any party without the prior written consent of the other parties, and any attempted assignment without such consent shall be void and of no effect, except that, nothwithstanding the foregoing, Buyer may assign this Agreement, the Closing Documents and any agreement contemplated hereunder or thereunder to any Affiliate of Buyer that is under common control with Buyer without the consent of any other party to this Agreement.

Agreement was not excused by the conduct of DCL. The trial court's declaratory judgment that AJC's termination of the DCL Agreement was wrongful and ineffective is consistent with the jury's finding that AJC's failure to comply with the DCL Agreement was not excused by the conduct of DCL. We reject AJC's argument that the Racing Commission's denial of DCL's application was a failed condition precedent which excused AJC from its contractual obligations.

*Exclusive Jurisdiction*

AJC further contends the trial court's declaratory judgment that its termination of the DCL Agreement was wrongful and ineffective was erroneous because the Racing Commission has exclusive jurisdiction to determine ownership of a racetrack license and DCL has not "successfully challenged" the Racing Commission's denial of its application or approval of KTAGS's application for transfer of ownership of the Stock. Therefore, according to AJC, it is excused from its obligations under the DCL Agreement and was permitted to seek another buyer of the Stock. As discussed above, we reject AJC's argument that the Racing Commission's denial of DCL's application was a failed condition precedent which excused AJC from its contractual obligations. We additionally note that neither the Racing Commission's denial of DCL's application, "which explicitly invited a cure," nor the DCL Agreement itself forecloses a subsequent application. *See Dallas City Limits II*, 418 S.W.3d at 735. Moreover, this Court previously rejected AJC's argument that the Racing Commission's approval of sale of the Stock to KTAGS rendered DCL's appeal moot:

> Although Racing Commission approval is necessary to obtaining licensee status, it has no direct bearing on DCL's contractual right to purchase the Stock. Both parties represent to this Court that the stock purchase agreement between AJC and KTAGS is expressly subject to the contract rights of DCL. Thus, the approval of KTAGS by the Commission means nothing so long as DCL possesses a superior contractual right to the Stock.

*Dallas City Limits I*, 376 S.W.3d at 796 (footnote omitted); *see also Dallas City Limits II*, 418 S.W.3d 727, 735 & n.9. ("Nothing in the Racing Commission's approval of the stock transfer to

–9–

KTAGS purports to supersede the parties' respective contract rights or indicates that the [Racing] Commission will no longer consider an application for approval of a stock transfer to [DCL].").  Thus, any failure by DCL to challenge the Racing Commission's denial of its application or approval of KTAGS's application is of no moment in this appeal.

*Conclusion*

The purpose of the UDJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ."  TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(a) (West 2015).  Under section 37.004(a) of the UDJA, "[a] person . . . whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."  TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2015).  The issue of the validity of AJC's purported termination of the DCL Agreement has "been at the forefront of the case throughout its development."  *Dallas City Limits I*, 376 S.W.3d at 798.  DCL clearly "contend[ed] that AJC terminated the [DCL] Agreement without authority, and, as a result, the termination should be given no legal effect," *id.* at 798 n.7, and DCL asked the trial court to declare the legal effect of the jury's findings on AJC's termination of the [DCL] Agreement. *Id.* at 798.

AJC's position in this appeal is based on the flawed proposition that it was entitled to give notice of its termination of the DCL Agreement because DCL allegedly failed to perform under that agreement in a timely manner.  *See id.* at 799 ("AJC charges DCL breached the [DCL] Agreement by not performing in a timely manner.").  The jury rejected this contention and found no breach of the DCL Agreement by DCL.  This Court remanded the case with instructions that the trial court allow DCL's trial amendment seeking a declaration that AJC's termination of the DCL Agreement was wrongful and ineffective and enter judgment on the jury's verdict in light

–10–

of that trial amendment. *Id.* at 802. There having been no finding of a breach of the DCL Agreement by DCL, there was no basis for AJC's purported termination of the DCL Agreement. On remand, the trial court concluded AJC's purported termination of the DCL Agreement was wrongful, and consequently, ineffective.

On this record, the trial judge's conclusions of law that AJC wrongfully terminated the DCL Agreement and that the termination was ineffective are consistent with the jury's findings that (1) DCL did not breach the DCL Agreement and AJC did breach the DCL Agreement, and (2) AJC's failure to comply with the DCL Agreement was not excused by the conduct of DCL. We conclude the trial court's conclusions of law are not erroneous as a matter of law. *See Westech Eng'g, Inc.*, 835 S.W.2d at 196 (conclusions of law may not be reversed unless they are erroneous as a matter of law); *see also Dallas Morning News v. Bd. of Trs. of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 536 (Tex. App.—Dallas 1993, writ denied) (appellate court reviews trial court's conclusions of law to determine whether the trial court correctly drew the legal conclusions from the facts). Accordingly, the trial court did not err by granting the declaratory judgment, and we resolve AJC's first issue against it.

## Attorney's Fees

In *Dallas City Limits I*, we indicated that "because we are remanding the case for further proceedings, we also remand the issue of attorney's fees. Both parties pleaded to recover their fees. Any entitlement to fees will depend upon the trial court's resolution of issues on remand." *Dallas City Limits I*, 376 S.W.3d at 801–02. We also noted in our prior opinion that "DCL had sought recovery of attorney's fees under both chapter 38 and chapter 37 of the Texas Civil Practice and Remedies Code." *Id.* at 801, n.9.

The trial court's amended final judgment awarded DCL its attorney's fees in the amount of $650,000. In its second issue, AJC contends the trial court erred by awarding attorney's fees

–11–

to DCL because DCL was not entitled to attorney's fees under either chapter 38 or chapter 37 of the civil practice and remedies code. AJC argues that DCL was not entitled to attorney's fees under chapter 38 because it did not prevail on a breach of contract claim and recover damages, noting that the trial court's amended final judgment ordered that AJC receive a take nothing judgment on all claims brought by DCL other than its claim for declaratory relief. AJC argues that DCL was not entitled to attorney's fees under chapter 37 because the award of fees is not reasonable and necessary or equitable and just, as required by chapter 37, and is not supported by sufficient evidence.

*Chapter 38 as a Basis for Award of Attorney's Fees*

The trial court's amended final judgment did not explicitly indicate whether the award of attorney's fees to DCL was made pursuant to chapter 38 or chapter 37 of the civil practice and remedies code. However, AJC correctly argues that DCL was not entitled to attorney's fees under chapter 38 because it did not prevail on a breach of contract claim and recover damages. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 670 (Tex. 2009) (party recovering no damages on breach of contract claim cannot recover attorney's fees under section 38.001(8) of the civil practice and remedies code); *see also Hodges v. Rajpal*, No. 05-13-01413-CV, 2015 WL 870729, at *11 (Tex. App.—Dallas Feb. 27, 2015, no pet.). Accordingly, we must determine whether the trial court's award of attorney's fees to DCL may be sustained under the provisions of chapter 37.

*Reasonable and Necessary Attorney's Fees Under Chapter 37*

In open court during trial, the parties' stipulated:

The remaining litigants have agreed that a reasonable and necessary attorneys [sic] fee through trial on any cause of action where attorneys [sic] fees may be recoverable would be $650,000. And that is for each side.

*See Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 734 (Tex. App.—Corpus Christi 1994, writ denied) (A "stipulation" is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter incident thereto.") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Martinez,* 800 S.W.2d 331, 334 (Tex. App.—El Paso 1990, no writ)).  However, at the hearing on DCL's motion for entry of judgment following remand, AJC's counsel stated AJC was withdrawing its stipulation regarding attorney's fees:

> I'm being told that I need to do this, so I'm going to do it.  It is [AJC's] position that that stipulation was entered into when [DCL] did not have a pleading that they are now asking the Court to grant the [trial] amendment on.  Therefore, [AJC] withdraw[s] the stipulation, to the extent that has effect.

Neither the trial judge nor opposing counsel responded to the statements of AJC's counsel.

AJC argues on appeal that DCL's trial amendment, amending its pleading to include a claim for declaratory judgment, provided good cause for AJC's withdrawal of the stipulation.  "It is true that all the intended circumstances must be considered in construing a stipulation, including the state of the pleadings."  *St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 619 (Tex. App.—Texarkana 1990, no writ); *see also Mann v. Fender*, 587 S.W.2d 188, 202 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.) (intention of parties in a trial stipulation is for determination of the court from language used in the entire agreement "in the light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties in respect of the issues") (quoting *Tex. Indem. Ins. Co. v. Dunn*, 221 S.W.2d 922, 924 (Tex. Civ. App.—Waco 1949, no writ)).

"The modification or rescission of a stipulation rests in the discretion of the trial court and is not reviewable on appeal in the absence of an abuse of that discretion."  *Westridge Villa Apartments v. Lakewood Bank & Trust Co.*, 438 S.W.2d 891, 895 (Tex. Civ. App.—Fort Worth 1969, writ ref'd n.r.e.) (quoting 53 Tex. Jur. 2d § 26, p. 348); *see also Uvalde Cnty. Appraisal Dist. v. F.T. Kincaid Estate*, 720 S.W.2d 678, 681 (Tex. App.—San Antonio 1986, writ ref'd

n.r.e.) (stipulations may be modified or withdrawn at discretion of the trial court). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The UDJA authorizes a court to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015); *see also City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 646 (Tex. 2013). Whether attorney's fees are reasonable and necessary under the UDJA are questions of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). An award of attorney's fees under the UDJA is committed to the discretion of the trial court, and we review the award under an abuse of discretion standard. *Id.*; *see also Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985) (grant or denial of attorney's fees in declaratory judgment action lies within discretion of trial court, and its judgment will not be reversed on appeal absent a clear showing it abused that discretion).

The record does not reflect, and AJC does not assert on appeal, that the trial court granted AJC leave to withdraw its stipulation. *See Martinez,* 800 S.W.2d at 334 (appellant's statements to trial court construed as agreement or stipulation within the contemplation of rule 11 of the rules of civil procedure, and appellant failed to obtain leave of court to withdraw the stipulation). The record confirms AJC merely announced its purported withdrawal of the stipulation "to the extent that has effect," without seeking a ruling from the trial court granting or denying leave for withdrawal of the stipulation. AJC has not preserved a complaint on appeal that the trial court abused its discretion by failing to grant it leave to withdraw its stipulation. *See* TEX. R. APP. P. 33.1(a) (to preserve complaint for appellate review, a party must make the complaint to the trial court by timely request, objection, or motion).

Further, we cannot conclude the trial court abused its discretion by awarding DCL $650,000 as reasonable and necessary attorney's fees. AJC specifically stipulated that, on "any cause of action where attorney's fees may be recoverable," $650,000 was reasonable and necessary. DCL sought attorney's fees at the time AJC entered into the stipulation. AJC did not limit its stipulation to a specific cause of action pleaded by DCL (for example, breach of contract), or to a cause of action pleaded by DCL at the time of the stipulation. AJC instead stipulated to the reasonable and necessary amount of attorney's fees for *any* cause of action where attorney's fees may be recovered. Indeed, the amount of attorney's fees awarded by the trial court was the amount AJC stipulated was reasonable and necessary.[6]

*Sufficiency of Evidence Supporting Award of Attorney's Fees Under Chapter 37*

AJC further argues that "[n]o evidence—or if the stipulation is considered, no factually sufficient evidence" was presented to the trial court to assist the trial court in determining the [attorney's] fees that would be reasonable and necessary to pursue solely [DCL's] new claim for declaratory relief." Therefore, we review the award of attorney's fees to DCL under the UDJA to determine whether the trial court abused its discretion by awarding fees because there was insufficient evidence that the fees were reasonable and necessary. *See Bouquet*, 972 S.W.2d at 21.

In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the verdict, indulging every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*. at 827. The final test is whether the evidence would enable reasonable and

---

[6] We note the final judgment was amended by the trial court "[i]n accordance with the Opinion of the Court of Appeals, the jury's verdict and the stipulations of the parties made during trial."

–15–

fair-minded people to reach the verdict under review. *Id*. Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex. 1998). In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see also Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

A stipulation "constitutes a binding contract between the parties, may be used to limit or exclude the issues to be tried, and even obviates the need for proof on the litigable issue." *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 311 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also Adkison v. Adkison*, No. 12-06-00077-CV, 2007 WL 259550, at *8 (Tex. App.—Tyler Jan. 31, 2007, no pet.) (mem. op.) (stipulation obviated the need for proof on the issue of appellate attorney's fees). "A stipulation constitutes some evidence of the reasonableness of requested attorneys' fees." *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 33 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

We are unpersuaded by AJC's assertion that there is legally and factually insufficient evidence to support the trial court's finding of $650,000 as the amount of DCL's reasonable and necessary attorney's fees. The parties' stipulation was some evidence of the reasonableness and necessity of attorney's fees and obviated the need for proof on the issue of reasonableness and necessity of DCL's attorney's fees. *See id*. The trial court had before it the stipulation comprising evidence of reasonable and necessary attorney's fees, and the record contains no controverting evidence that the fees were unreasonable or unnecessary. *See Jackson v. Barrera*, 740 S.W.2d 67, 68–69 (Tex. App.—San Antonio 1987, no writ) (appellate record reflected trial court had before it stipulations comprising evidence on attorney's fees and there was no

–16–

controverting evidence that the fees were unreasonable, unnecessary, or excessive; amount of fees awarded was supported by legally and factually sufficient evidence). On this record, there was sufficient evidentiary support for the amount of reasonable and necessary attorney's fees awarded by the trial court, and therefore we cannot conclude the trial court abused its discretion on the basis that there was legally or factually insufficient evidence to support the award. *See id*. ("When there is some evidence to support the award [of attorney's fees], it will not be disturbed absent an abuse of discretion.").

*Equitable and Just Attorney's Fees Under Chapter 37*

AJC also argues the trial court's award of attorney's fees to DCL is not equitable and just under the UDJA because DCL's trial amendment was requested after the evidence at trial was closed. In the underlying trial, after the close of evidence, each party moved orally for a directed verdict on various claims of the opponent. *Dallas City Limits I*, 376 S.W.3d at 796. Counsel for AJC announced AJC was non-suiting its declaratory judgment claim. *Id*. Counsel for DCL objected, stating "[w]e're entitled to a declaration that we did not breach, and that [AJC's] notice of termination is ineffective," and requested a trial amendment to "assert the inverse of [AJC's] declaratory judgment action, since that issue was already before the [trial court], and has been tried by consent, because it was part of the pleadings" and was not a surprise and would not prejudice AJC. *Id*. at 796–97. The trial court denied DCL's subsequent written motion renewing its request for a trial amendment. *Id*. at 797. On appeal, we concluded DCL's requested trial amendment did not assert a new cause of action, the factual premise of the declaration DCL sought "was always before the jury," and the trial amendment did not surprise or prejudice AJC. *Id*. at 797–98. We reversed the trial court's judgment and remanded to the trial court with instructions to allow DCL's trial amendment pleading for declaratory relief, and to sign a new judgment based on the jury's findings in light of the trial amendment. *Id*. at 799. After remand,

the trial court signed an amended final judgment in which the trial court granted judgment in favor of DCL, declaring that AJC's termination of the Agreement was wrongful and ineffective.

Whether the fees are equitable and just are questions of law. *Bocquet*, 972 S.W.2d at 21. Matters of equity and the responsibility for just decisions are addressed to the trial court's discretion, and we review the trial court's award of equitable and just attorney's fees under an abuse of discretion standard. *Id*.; *see also In re C-Span Entm't, Inc.*, 162 S.W.3d 422, 428 (Tex. App.—Dallas 2005, orig. proceeding [mand. denied]) ("Matters of equity are committed to the trial court's discretion."). "Whether it is 'equitable and just' to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case." *Approach Res. I, L.P. v. Clayton*, 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.).

"A trial court's grant or denial of attorney's fees in a declaratory judgment action . . . will not be reversed on appeal unless the complaining party clearly shows the trial court abused its discretion." *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 893–94 (Tex. App.—Dallas 2001, pet. denied). The fact that DCL's trial amendment was requested after the evidence was closed is not dispositive of entitlement to attorney's fees because the factual premise of the declaration DCL sought "was always before the jury" and had AJC not non-suited its claim for declaratory relief after the evidence was closed, DCL would have had the opportunity to be awarded the same relief sought by its trial amendment. *Dallas City Limits I*, 376 S.W.3d at 797–98 ("Throughout the trial, AJC had maintained the same request for declaratory relief, i.e., it sought specific resolution of the question of whether a purported breach of the [DCL] Agreement by DCL justified AJC's termination of the [DCL] Agreement."). Further, there is nothing in the record before us to suggest that the trial court's award of attorney's fees to DCL as the prevailing party, based upon stipulation of the parties as to the correct amount of attorney's fees, was inequitable or unjust. Because there is no indication in the record that the trial court's award of

attorney's fees was arbitrary or unreasonable, we conclude the trial court did not abuse its discretion. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *see also Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 319 (Tex. App.—Texarkana 2006, pet. denied) ("Because reasonable minds can differ concerning whether the attorney's fees are just and equitable, we cannot say the trial court abused its discretion in awarding such fees . . . .").

*Conclusion*

We are unpersuaded by AJC's arguments that the trial court's award of attorney's fees to DCL under chapter 37 of the civil practice and remedies code is not reasonable and necessary, equitable and just, or supported by sufficient evidence. Accordingly, we resolve AJC's second issue against it.

**Conclusion**

Having resolved AJC's issues against it, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

140114F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AUSTIN JOCKEY CLUB, LTD., Appellant

No. 05-14-00114-CV        V.

DALLAS CITY LIMITS PROPERTY CO., L.P., Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. 08-11846.
Opinion delivered by Justice Fillmore, Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Dallas City Limits Property Co., L.P. recover its costs of this appeal from appellant Austin Jockey Club, Ltd.

Judgment entered this 5th day of June, 2015.