**DALLAS CITY LIMITS PROPERTY CO., L.P., Appellant**

v.

**AUSTIN JOCKEY CLUB, LTD., Appellee.**

No. 05–11–00140–CV.

Court of Appeals of Texas, Dallas.

July 11, 2012.

Richard Illmer, Chad Andrew Johnson, Chalon Nicole Clark, Brown McCarroll, L.L.P., Dallas, TX, Elizabeth G. Bloch, Brown McCarroll, L.L.P., Austin, TX, for Appellant.

Richard A. Capshaw, Capshaw & Associates, Dallas, TX, Ernest W. Boyd, Eric Michael Adams, Corey J. Seel, Mehaffy Weber, P.C., Houston, TX, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

Dallas City Limits Property Co., L.P. ("DCL") appeals a take nothing judgment in this suit on a Stock Purchase Agreement (the "Agreement"). In three appellate issues, DCL contends the trial court erred by refusing to allow a requested trial amendment and by failing to award DCL

the remedy of specific performance. Austin Jockey Club, Ltd. ("AJC") conditionally cross-appeals, challenging the trial court's denial of its Motion for Judgment Notwithstanding the Verdict and its submission of DCL's requested jury issue on laches. We reverse the trial court's judgment and remand the case for further proceedings in accordance with this opinion.

## BACKGROUND

In August 2005, Longhorn Downs, Inc. was a wholly owned subsidiary of AJC. Longhorn Downs' sole asset was a Class 2 Racetrack License (the "License") issued by the Texas Racing Commission. DCL entered into the Agreement to purchase all of the capital stock of Longhorn Downs (the "Stock") from AJC.[1] DCL paid AJC the purchase price of $1,500,000 for the Stock, and the Stock was placed in an escrow account. A party wishing to hold and operate under a racing license in Texas must have the approval of the Texas Racing Commission, and the Agreement required, *inter alia*, that DCL use its reasonable best efforts to obtain the approval of the Commission. The Agreement also required that AJC use its reasonable best efforts to assist DCL in obtaining that approval.

The parties initially thought the transfer could be accomplished in approximately one year. However, DCL encountered a number of difficulties during its process of applying for approval, especially in obtaining an appropriate site for the prospective racetrack. When DCL procured an option to buy a suitable property, AJC asked the Racing Commission to place DCL's application on its agenda for approval. But during the time it took for DCL's application to come before the Commission, DCL lost the option on that property.[2] When the application was finally evaluated by the Commission, it was denied. DCL understood it would have the opportunity to reapply for approval. But approximately two months later, AJC notified DCL it was terminating the Agreement. The same day, AJC entered into a second stock purchase agreement with KTAGS Downs Holding Company, LLC ("KTAGS").

DCL sued AJC, and AJC counterclaimed against DCL.[3] Following trial, the jury found that AJC had breached the Agreement but DCL had not. The jury also found that (1) DCL had made a negligent misrepresentation to AJC, but (2) AJC had unreasonably delayed in asserting its rights on that basis and DCL had acted to its detriment in reliance on AJC's delay, and (3) AJC was entitled to $0 as compensation for the misrepresentation. The trial court entered a take-nothing judgment against both parties.

Finally, we acknowledge that the relationship between these parties has spawned a number of additional suits and administrative proceedings in forums across the State. We address those proceedings only when necessary to resolve the appeal before us.

## MOTION TO DISMISS APPEAL AS MOOT

■ After briefing was complete but before submission, AJC moved to dismiss this appeal as moot. In one of the additional proceedings we referred to above,

---

1. The Agreement was actually signed by DCL's predecessor entity, Dallas City Limits, LLC, which subsequently assigned its rights under the Agreement to DCL. We will refer to DCL as the contracting party in this opinion.

2. DCL offered evidence its application to the Racing Commission was complete in October 2008. However, the hearing was not held until September 2009.

3. Other individuals and entities have been parties to this litigation, but none are before us.

AJC presented KTAGS to the Racing Commission as a potential purchaser of the Stock and holder of the License. The Commission approved KTAGS, and AJC argues in the motion to dismiss that the Commission's approval of a licensee other than DCL renders DCL's appeal moot. We disagree. Although Racing Commission approval is necessary to obtaining licensee status, it has no direct bearing on DCL's contractual right to purchase the Stock. Both parties represent to this Court that the stock purchase agreement between AJC and KTAGS is expressly subject to the contract rights of DCL.[4] Thus, the approval of KTAGS by the Commission means nothing so long as DCL possesses a superior contractual right to the Stock. This appeal can resolve some issues affecting DCL's contractual right to the Stock. Accordingly, the appeal is not moot. *See VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex.1993) ("Generally, an appeal is moot when the court's action on the merits cannot affect the rights of the parties."). We deny the motion to dismiss.

### REQUEST FOR TRIAL AMENDMENT

As trial began, AJC's pleadings contained a number of counterclaims against DCL, including an action for declaratory judgment. AJC sought a two-part declaration from the trial court:

[1] that DCL was required to use reasonable best efforts to obtain all governmental approvals necessary with respect to the transfer of the capital stock from [AJC] to DCL and DCL's use and operation under the racing license, including, without limitation, the approval of the Texas Racing Commission [and]

[2] that DCL's failure to obtain all governmental approvals necessary with respect to the transfer of the capital stock

from [AJC] to DCL and DCL's use and operation under the racing license, including, without limitation, the approval of the Texas Racing Commission since the execution of the Stock Purchase Agreement constitutes a breach of the Stock Purchase Agreement allowing Austin Jockey Club to terminate.

In short, AJC pleaded for a declaration that its termination of the Agreement was justified when DCL breached the Agreement by failing to obtain the approval of the Racing Commission. AJC also counterclaimed against DCL for breach of contract on a number of grounds, one of which was its "[f]ailure to obtain governmental approvals, including the Texas Racing Commission's approval, of transfer of ownership of the Capital Stock in Longhorn Downs, Inc. from [AJC] to [DCL] as required by [listed sections] of the Stock Purchase Agreement."

After the close of evidence, each party moved orally for a directed verdict on various claims of its opponent. When DCL began to address AJC's declaratory judgment claim, counsel for AJC interrupted to announce that AJC was non-suiting that claim. Counsel for DCL objected, stating "[w]e're entitled to a declaration that we did not breach, and that their notice of termination is ineffective." The trial court ruled AJC could non-suit any claim it had brought and did not need the court's permission to do so. Counsel for DCL immediately asked for a trial amendment stating:

If that is the case, then at this time I would ask for a trial amendment that we be allowed to assert the inverse of their declaratory judgment action, since that issue was already before the Court, and has been tried by consent, because it was part of the pleadings. There cer-

---

4. AJC makes this representation in its argument that it did not breach the Agreement by entering into the KTAGS contract. DCL makes the representation in its response to AJC's motion to dismiss.

tainly isn't any surprise. There isn't any prejudice. And we're entitled to a declaration that their notice of termination is ineffective, and that they are not entitled to the return of the stock, which is currently Longhorn Downs' stock, which is currently held in escrow. There certainly can't be any surprise. There certainly can't be any prejudice from that issue, which has already been tried now for a solid week.

The court did not rule at that time; it turned instead to a question concerning another claim addressed by DCL's motion for directed verdict. At the end of the proceeding, the court stated that it would reserve its ruling on the directed verdict issues until the charge was drawn up and would make its rulings before submitting the charge to the jury. But the court did not rule on any of the matters raised during the directed verdict hearing, including DCL's request for a trial amendment.

After the jury's verdict, but before the trial court ruled on post-verdict motions, DCL filed a written motion renewing its request for a trial amendment. DCL asked specifically for permission to amend its pleadings to include a request for declaratory judgment that "Austin Jockey Club's termination of the Stock Purchase Agreement was wrongful and ineffective." [5] AJC opposed DCL's request for a trial amendment, and, this time, the trial court expressly denied the request.

■ Trial amendments are governed in the first instance by rule 66:

[I]f during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the mer-

its of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits.

TEX.R. CIV. P. 66. A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *Blue Star Operating Co. v. Tetra Tech., Inc.,* 119 S.W.3d 916, 919–20 (Tex.App.-Dallas 2003, pet. denied). Thus, we review the trial court's ruling first to determine whether allowing the amendment was mandatory; if it was not mandatory, then we review the ruling for an abuse of discretion. *See id.* at 920. In this case, AJC contends the amendment was not mandatory both because it asserted a new cause of action and because it would have unfairly surprised and prejudiced AJC. We reject both arguments.

■ At the outset, we conclude DCL's requested trial amendment did not assert a new cause of action. An amendment adds a new cause of action and is prejudicial on its face when: (1) it asserts a new substantive matter that reshapes the nature of the trial itself; (2) the opposing party could not have anticipated the new substantive matter given the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case. *Ritchie v. Rupe,* 339 S.W.3d 275, 305–06 (Tex.App.-Dallas 2011, pet. denied). DCL's requested trial amendment did not add any new substantive matter. Throughout trial, AJC had maintained the same request for declaratory relief, i.e., it sought specific

5. DCL also asked for a declaration "ordering Austin Jockey Club, upon request of Dallas City Limits, to request that the Texas Racing Commission place Dallas City Limits' application on the Texas Racing Commission agenda for approval." But it has not pursued this request on appeal, and it is not before us.

resolution of the question of whether a purported breach of the Agreement by DCL justified AJC's termination of the Agreement. Moreover, even after it non-suited its claim for declaratory relief, AJC continued to assert its claim that DCL breached the Agreement by failing to use its best efforts to obtain the Racing Commission's approval. This claim has been AJC's consistent justification for terminating the Agreement: AJC's live pleading included this allegation; AJC offered testimony throughout trial in an effort to prove such a breach; and AJC requested submission of the purported breach by DCL to the jury.[6] We reject AJC's arguments that it was not on notice of evidence it needed to offer or questions it needed to have submitted to the jury. AJC has not identified any evidence it would have offered in response to the amendment sought by DCL had it been included within DCL's pleading before trial. The predicate factual issue to either party's declaratory judgment—DCL's breach of the Agreement—was squarely before the jury. Because no new substantive matter was raised by DCL's requested trial amendment, the request did not add a new cause of action, and the amendment sought was not prejudicial on its face. *See id.* at 305–06.

◼ We conclude DCL's requested trial amendment did not surprise or prejudice AJC for all the same reasons. The burden of showing surprise or prejudice rests on the party resisting the amendment. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994). But AJC could not have been surprised by DCL's request: the issue of DCL's breach and the validity of AJC's termination had been at the forefront of the case throughout its development. And AJC did not carry its burden to identify any way this trial amendment would cause AJC unfair prejudice. The factual premise of the declaration sought was always before the jury. Indeed, only one factor in the case changed when DCL asked for its trial amendment the first time: where before *AJC* had asked the court to declare the legal effect of the jury's findings on its termination of the Agreement, now *DCL* was asking the court to declare the legal effect of the jury's findings on AJC's termination of the Agreement.

◼ AJC contends the amendment was inappropriate as a matter of law. It correctly states that declaratory relief will not be granted where the cause of action has fully matured and invokes a remedy at law. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 873 (Tex. App.-Dallas 2005, no pet.). That rule would govern our decision if DCL were seeking a declaration that AJC breached the Agreement or a declaration that DCL did not breach the Agreement. Those issues had fully matured and were decided by the jury; there was no need for a declaration of breach by either party. However, once AJC non-suited its declaratory judgment action, there was no assurance that the trial court would include within its judgment the legal effect of the jury's breach findings on the termination of the Agreement. And, in fact, the court's judgment did not address that issue. Accordingly, it was not redundant to seek the trial court's ruling on the legal question of the effect of the jury's findings on the termination of the Agreement. *See Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005) (is for court to decide legal effect of jury's finding).[7]

---

**6.** For all these reasons, we conclude the issue before us was expressly tried, and we need not address the parties' arguments concerning trial by implied consent.

**7.** AJC makes three more arguments concerning the trial amendment. First, it argues that DCL's contention that AJC's termination was "ineffective" conflicts with DCL's breach of

We conclude that allowing DCL's trial amendment was mandatory; the trial court had no discretion to deny DCL's request. *See Blue Star Operating Co.,* 119 S.W.3d at 920. We sustain DCL's first appellate issue, and we reverse the trial court's judgment. However, because DCL sought the trial amendment after the evidence was closed, we do not remand for a new trial. Instead, we instruct the trial court to allow DCL's trial amendment pleading for declaratory relief. And we further instruct the trial court to sign a new judgment that is based on the jury's findings in light of the trial amendment.

Given our resolution of this first issue, we need not address DCL's second issue. We address below its third issue, concerning the award of attorney's fees. Because we have sustained DCL's first issue, we address AJC's conditional cross-points.

## JUDGMENT NOTWITHSTANDING THE VERDICT

In its first two cross-points, AJC contends the trial court erred by denying its motion for JNOV on two grounds. According to AJC, the evidence at trial did not support the jury's findings (1) that DCL did *not* breach the Agreement, or (2) that AJC *did* breach the Agreement. We review a trial court's ruling on a motion for JNOV under a no-evidence standard, meaning we credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex.2009). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* Thus, to prevail on its motion for JNOV, AJC was

required to show that the evidence conclusively proved DCL breached the Agreement, AJC did not breach the Agreement, and no reasonable jury could conclude otherwise. *See id.*

## DCL's BREACH OF THE AGREEMENT

AJC contends the overwhelming evidence at trial establishes that DCL did breach the Agreement. Specifically, AJC charges DCL breached the Agreement by not performing in a timely manner. The evidence on this issue is mixed. The Agreement itself contains no deadline for DCL to obtain the necessary governmental approvals. The Agreement does say that time is of the essence. There was evidence the parties expected the process to be accomplished in about a year. However, there was evidence that DCL encountered a number of difficulties as it sought a potential site for the racetrack. There was also evidence that—beginning the year the Agreement was signed—a change in the leadership of the Racing Commission led to a much more laborious process for applicants, including DCL. Indeed, Michael Burleson, formerly the Deputy Director of Racing, testified that the process of approving a change of ownership of a racing license before 1995 "probably required 10 percent of the time and effort it does now." We conclude there was more than a scintilla of evidence that DCL efforts were not unreasonably untimely given the circumstances.

AJC relies on *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195 (Tex.2004), for the proposition that "[w]hen a contract specifies that time

---

contract claim that AJC "wrongfully terminated" the Agreement. We see no conflict: DCL is clearly contending that AJC terminated the Agreement without authority, and, as a result, the termination should be given no legal effect. AJC goes on to argue that DCL's proposed amended petition contains claims and a

request for damages that DCL had abandoned earlier in the proceeding. Nothing in the proposed trial amendment would serve to resuscitate those claims. None of these arguments defeat DCL's request for a trial amendment.

is of the essence, failure to timely perform is a material breach as a matter of law." We do not disagree. But *Mustang Pipeline* differs significantly from this case. The issue in *Mustang Pipeline* was whether one party's breach by untimely performance was material. The contract in that case provided a deadline for performance; it also provided that time was of the essence. *Id.* at 199 ("The contract specifically stated that 'all time limits stated in the Contract are of the essence to the Contract,' and the contract called for '100 percent completion of the pipeline system no later than April 30, 1997.' "). Accordingly, the supreme court concluded that the undisputed failure to meet the performance deadline was a material breach as a matter of law. *Id.* at 200. But for our case, all this tells us is that a breach of timeliness would be material, given that the Agreement also states that time is of the essence. *See id.* *Mustang Pipeline* does not change settled law that when a contract does not contain a deadline for performance—and the Agreement does not contain such a deadline—the question is whether performance was accomplished within a reasonable time under the circumstances. *See, e.g., Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944) ("Generally, where no time of performance is stated in a contract, the law will imply a reasonable time."); *see also Solomon v. Greenblatt,* 812 S.W.2d 7, 15 (Tex.App.-Dallas 1991, no writ) ("What is reasonable depends on the facts and circumstances as they existed at the date of the contract.").

▬ Questions of reasonableness are inherently issues for the jury. *Hunsucker v. Omega Indus.,* 659 S.W.2d 692, 698 (Tex.App.-Dallas 1983, no writ). Having concluded there was more than a scintilla of evidence supporting the jury's failure to find a breach by DCL based on untimeliness, we will not substitute our judgment for the jury's.

AJC also charges the evidence establishes that DCL breached the Agreement by not using its reasonable best efforts to obtain all necessary governmental approvals. AJC declares that if DCL had used its best efforts, it would have succeeded in obtaining land and securing the approval of the Racing Commission "in *substantially* less time than four years." But there is no evidence to this effect. DCL offered testimony that whether successful or not, there was a continuing effort to obtain a site. And it offered detailed testimony describing the efforts. Again, the reasonableness of DCL's efforts was for the jury to decide. *See id.* And we conclude there was more than a scintilla of evidence supporting the jury's finding.

We conclude the evidence was sufficient to support the jury's finding that DCL did not breach the Agreement. The trial court did not err in refusing to grant AJC's motion for JNOV on this ground. We decide AJC's first cross-point against it.

### AJC's Breach of the Agreement

In its second cross-point, AJC contends insufficient evidence supports the jury's finding that it breached the Agreement. Again, if there was more than a scintilla of evidence supporting the jury's finding, then the evidence is sufficient. *See Tanner,* 289 S.W.3d at 830. DCL contended in its pleading that AJC had breached the Agreement in two ways: by wrongfully terminating the Agreement and by engaging in negotiations to sell the Stock to a party other than DCL. Evidence of either of these claims would support the jury's findings.

▬ The Agreement included a representation by AJC that it had not and would not "enter into any agreement with respect to a sale, transfer or encumbrance of ... the [Stock]." But it is undisputed that AJC signed its contract with KTAGS

the very day the Commission rejected DCL's application. AJC claims the breach was not material because its contract with KTAGS was merely a "back-up" agreement, subject to DCL's rights to the Stock. But as part of this "back-up" agreement, AJC actually placed KTAGS before the Racing Commission for its approval as the ultimate licensee. Then AJC attempted to have this appeal declared moot, taking the position that DCL no longer had any claim to the Stock because KTAGS had received the approval of the Commission. Although we have denied that motion, there is evidence that AJC has replaced its support of DCL as purchaser of the Stock and holder of the License with support of KTAGS. Such a breach was unquestionably material.

We conclude there is more than a scintilla of evidence supporting the jury's finding that AJC breached the Agreement. Thus, the trial court did not err in refusing the grant AJC's motion for JNOV on this ground as well. We overrule AJC's second cross-point.

### SUBMISSION OF LACHES DEFENSE

■ In its third cross-point, AJC argues the trial court erroneously submitted a jury question on DCL's defense of laches to AJC's claim of negligent misrepresentation. We review the trial court's submission of jury questions for an abuse of discretion. *MRT, Inc. v. Vounckx,* 299 S.W.3d 500, 505 (Tex.App.-Dallas 2009, no pet.). The trial court must submit a question that is raised by the written pleadings and evidence. TEX.R. CIV. P. 278; *Park N. Serv. Ctr., L.P. v. Applied Circuit Tech., Inc.,* 338 S.W.3d 719, 721 (Tex.App.-Dallas 2011, no pet.).

■ The jury found that DCL made a negligent misrepresentation on which AJC

relied. It then found that AJC had "unreasonably delayed in asserting its rights" and that DCL had "made a good faith and detrimental change in position because of the delay." AJC contends that this defense is inconsistent with DCL's argument that four years was not an unreasonably long time for its own performance under the Agreement. AJC confuses a reasonable time to perform under a contract with a reasonable time to assert a claim for wrongdoing. DCL claims that AJC's conduct for four years was not consistent with the claims of wrongdoing and misrepresentation it now makes. Throughout this time period, AJC acknowledges it supported DCL's efforts to obtain the License. Under these facts—where AJC outwardly supported DCL and refrained from asserting claims of wrongdoing it now claims to have possessed throughout the time period—a jury could have concluded that AJC had, in effect, "slumbered" on its rights. *See Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993). And as to making a good faith and detrimental change in position because of AJC's conduct, DCL paid a yearly inactive license fee of up to $100,000 on AJC's behalf through 2009.[8]

DCL's written pleadings raised its laches defense, and some evidence supports the defense in this case. We discern no abuse of discretion in the trial court's submission of this issue to the jury for resolution. *See Park N. Serv. Ctr.,* 338 S.W.3d at 721. We overrule AJC's third cross-point.

### ATTORNEY'S FEES

Because we are remanding the case for further proceedings, we also remand the issue of attorney's fees. Both parties pleaded to recover their fees.[9] Any enti-

8. The inactive license fee was invoiced by the Racing Commission to AJC.

9. DCL sought recovery under chapter 37 ("Declaratory Judgments") and chapter 38 ("Attorney's Fees") of the Texas Civil Practice

tlement to fees will depend upon the trial court's resolution of issues on remand.

### CONCLUSION

We reverse the trial court's judgment. We remand this case to the trial court with the following instructions:

(1) allow DCL's trial amendment seeking a declaratory judgment on the issue:

Austin Jockey Club's termination of the Stock Purchase Agreement was wrongful and ineffective.

(2) enter judgment on the jury's verdict in light of that trial amendment; and

(3) make whatever award of attorney's fees is appropriate.

and Remedies Code. AJC sought recovery under those two chapters and specifically under the Agreement as well.