**AFFIRM in Part, REVERSE in Part, and REMAND, and Opinion Filed June 27, 2024.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00135-CV**

**DIANE PIWKO, Appellant**
**V.**
**STACEY ACEVEDO, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05314-2019**

**MEMORANDUM OPINION**

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Kennedy

In this landlord–tenant dispute, Stacy Acevedo ("Tenant") obtained a judgment against Diane Piwko ("Landlord") on her breach of contract claim and request for injunctive relief. On appeal, Landlord challenges the sufficiency of the evidence to support various findings of the trial court and the amount of damages awarded. While the evidence supports the trial court's findings Landlord failed to maintain the premises in good repair and violated Tenant's right to quiet enjoyment and that Tenant's breaches of the Commercial Lease Agreement were not material, the evidence is legally insufficient to support the amount of damages awarded.

However, there is some evidence to support an award of damages. Accordingly, we reverse the trial court's judgment awarding Tenant damages and attorney's fees on her breach of contract claim and remand the case for further proceedings consistent with this opinion.[1] Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

On January 2, 2019, Landlord and Tenant entered into a Commercial Lease Agreement and a Consignment Agreement (collectively, Agreements) whereby Tenant leased the ground floor of a three-story building located at 200 McKinney Street in Farmersville, Texas, to operate a retail yarn store known as "Yarn and You." The leased premises also included a balcony/mezzanine that was attached to and accessible by the ground floor. Landlord and her husband resided in a residence on the third floor of the building. Landlord retained certain rights of access to the leased premises. Under the Commercial Lease Agreement, Tenant was to make monthly rent payments equal to 6% of the prior month's total sales of product as defined in the Consignment Agreement. The Consignment Agreement provided for Tenant to sell merchandise in the store that belonged to Landlord. Landlord had

---

[1] Although we reverse and remand for a new trial on liability and damages because of the lack of sufficient evidence to support the damages awarded, we nevertheless address Landlord's issues concerning the legal sufficiency of the evidence to support the trial court's liability findings because legal sufficiency is a potential reverse and render issue. *See Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993); *GB Tubulars, Inc. v. Union Gas Operating Co.*, 527 S.W.3d 563, 567 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We need not address Landlord's issues concerning the factual sufficiency of the evidence to support the trial court's liability findings. TEX. R. APP. P. 47.1.

–2–

previously operated a retail yarn store in the leased space under the name "Fiber Circle." The terms of the Agreements were three years.

The relationship between Landlord and Tenant deteriorated over time, and, on September 19, 2019, Tenant filed suit seeking to enjoin certain behavior of Landlord. She later amended her petition to assert various causes of action, including breach of contract. Landlord filed a counterclaim seeking to enjoin certain behavior of Tenant and Tenant's husband, and asserting, among other things, that Tenant breached the Commercial Lease Agreement by failing to timely provide proof of insurance and by installing security cameras without Landlord's consent.

On October 3, 2019, the trial court signed a temporary restraining order precluding Landlord from taking certain action with respect to Tenant. A temporary injunction followed on October 9. The record does not contain a ruling on Landlord's request for any interim injunctive relief.

The case proceeded to a bench trial on October 31, 2022. The trial court took judicial notice of its file and admitted into evidence 73 exhibits proffered by Tenant and 27 exhibits proffered by Landlord. Tenant's exhibits included a summary of requested relief, the Agreements, photographs of the premises, text messages between the parties, videos of the premises, a review of financials in support of damages, and attorney's fee invoices. Landlord's exhibits included the Agreements, building diagrams, a settlement agreement waiving the arbitration provision in the Consignment Agreement, various communications from Landlord's attorney to

–3–

Tenant, documents from the forcible detainer action, proof of insurance, photographs, newsletters prepared by Tenant, accounting for rent and consignment payments, and attorney's fee invoices. The witnesses at trial were Tenant, Tenant's husband, Landlord, Landlord's husband, a woman who was acquainted with both Landlord and Tenant, and the parties' attorneys.

Tenant testified that every two weeks she made two payments to Landlord: one for rent and one for consignment. The amount of rent was tied to sales. Tenant testified that four to five months into the lease agreement her relationship with Landlord started to deteriorate after she noticed and complained about a substance dripping from the ceiling into the leased space and onto product she was trying to sell. Tenant identified the substance as cat urine and attributed it to multiple cats living in Landlord's upstairs residence. In support of her claim the substance was cat urine, Tenant indicated that the odor emanating from the substance was clearly a cat odor. She further explained the substance and its odor impacted her ability to do business. In addition to her testimony, Tenant offered photographic evidence establishing a substance was dripping down from the ceiling above the leased space. With respect to the breach of her right to quiet enjoyment of the leased premises, Tenant testified that after the temporary injunction hearing, on one occasion, she unlocked the leased space and found Landlord in the leased space with the lights off. She explained Landlord yelled at her in an incoherent manner placing her in fear of being harmed. Tenant also stated Landlord threatened her and her children and that

Landlord had access to firearms that were being stored in Landlord's personal residence. Landlord's behavior and access to firearms caused Tenant to install security cameras on counters and shelves in the leased space. In addition, Tenant explained that after the temporary injunction hearing, Landlord retrieved more than 60 filthy boxes or bags of what Tenant referred to as "reject yarn" from a storage unit and left them scattered in the leased space making it impossible to walk through the building. One of the boxes had an enormous dirt dauber nest on it. Tenant introduced into evidence photos of the bags and boxes. Tenant also testified that Landlord routinely cut portions of the power to the leased space, altered the positioning of the security cameras, and made recordings of Tenant's private conversations without her knowledge or permission. With respect to damages, Tenant introduced into evidence a document titled "Review of financials while under contract with Diana." Tenant explained she listed all of the rent and consignment payments she made to Landlord by month, which ranged from $300 to $1,582.72, and projected what those payments would have been had she stayed in the leased space for the remaining 18 months of the 3-year lease. As the owner of the building from which Tenant was then operating Yarn and You, she testified that the fair market rental rate for the new space was $3,500 to $5,000 per month. She used the $3,500 figure to calculate the difference between what she would have paid had she remained in the leased space and what she would pay for rent in a comparable space and came up with a figure of $50,642.16. Tenant also explained that she calculated

loss of potential revenue from the sale of consignment goods by estimating the total sales for the remainder of the lease term and subtracting the cost of consigned goods and came up with a figure of $118,738.91. Tenant admitted that she did not give Landlord a copy of the insurance policy she secured for several months despite repeated requests.

Tenant's husband testified that he installed the cameras in the leased space. He indicated the cameras were not drilled into the building; they were just set on a shelf. He stated that there were multiple instances where Landlord would change the cameras' location so that they were not recording anything visible.

Joanna Robertson testified she and Landlord have been very good friends since January of 2007. Robertson became acquainted with Tenant from sit-and-knit Sundays at the store. She testified she frequented the store and talked about changes she saw therein after Landlord and Tenant entered into their agreements and about how she stopped going to the store as a result of same. She testified she believed the liquid dripping into the leased space was condensation from the air conditioning units that were located overhead the leased space.

Landlord's husband testified he cleaned up the drippings, but he did not necessarily know they were cat urine. He acknowledged that he and his wife would trip a breaker after hours so that Tenant's internet would not be working, and the cameras would not be recording. Landlord's husband testified they did so because

they were concerned about their privacy as one of the cameras faced a door leading to their residence.

Landlord testified Tenant wrongfully attempted to push her out of the business by not including the name Fiber Circle on promotional materials, by telling people she was out of business, and by putting a sign on the door that said "Yarn and You" only. She claimed Tenant's husband intimidated and tormented her, and that she did not harass, annoy or follow Tenant in violation of the temporary injunction. That she simply came into the store to check on things and to visit with long time friends and customers as she had a right to do so. She complained about Tenant burning candles and using deodorizers to cover the claimed cat urine odor urging she was sensitive to the scents and was concerned that the yarn would absorb the scents, thereby damaging same.

At the conclusion of trial, the trial judge announced his decision. He stated that he was going to find for Tenant on her breach of contract claim and the request for permanent injunction. He indicated that under Section XIV of the lease Landlord had a duty to keep the premises in good repair, so regardless of whether the substance leaking from the ceiling was cat urine or condensation from the air conditioner, it was Landlord's duty not to let that occur and to correct it when it was occurring. He further indicated that he was awarding damages in the amount of $50,642.16 and reasonable and necessary attorney's fees in the amount of $17,955. On November 15, 2022, the trial judge rendered judgment in accordance with his prior ruling.

Landlord requested findings of fact and conclusions of law. After this Court ordered the trial judge to make findings of fact and conclusions of law, the trial judge made his findings and conclusions. The following are among the trial judge's findings of fact and conclusions of law. He believed Tenant's testimony especially as it related to the permanent injunction and damages was credible. The parties entered into a valid and enforceable contract. That contract was the Commercial Lease Agreement, which required Landlord to maintain the leased premises in good repair at all times and included a provision that Tenant had the right to quiet enjoyment of the premises. Tenant performed her obligations under the Commercial Lease Agreement and was excused from further performance by Landlord's material breaches of the agreement. Landlord breached the Commercial Lease Agreement by not maintaining the premises in good repair at all times and by violating the quiet enjoyment provision of the agreement. Landlord's breaches amounted to a constructive eviction of Tenant and forced her to terminate her obligations under the lease and to find a suitable alternative commercial space to continue operating her business. Tenant was entitled to monetary judgment for damages related to Landlord's breaches of the agreement in the amount of $50,642.16. As the prevailing party, Tenant was entitled to recover attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code in the amount of $17,955. The trial judge further found Tenant's installation of video cameras on the premises and failure to provide proof of insurance were not material breaches of the Commercial Lease

Agreement and that Landlord used these alleged breaches as a subterfuge to file a wrongful eviction proceeding.

## DISCUSSION

### I.       Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Unchallenged findings of fact are binding on the parties and the reviewing court. *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 658 (Tex. App.—Dallas 1993, writ denied).

When a court makes findings of fact, but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply the omitted element by implication. We presume the trial court's omission is inadvertent and we are authorized by Rule 299 to presume the trial court impliedly made any findings, supported by the record, that are necessary to support its judgment. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255–56 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Fulgham v. Fisher*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet)*.* When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

When an appellant challenges the factual sufficiency of the evidence, we consider all the evidence supporting and contradicting the finding. *Sheetz*, 503 S.W.3d at 502. In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Fulgham*, 349 S.W.3d at 157. The trial court may choose to believe one witness over another, and we may not impose our own opinion to the contrary. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Fulgham*, 349 S.W.3d at 157 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

When a party challenges a trial court's conclusions of law, we review the challenged conclusions de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court's conclusions of law are not subject to

–10–

challenge for lack of factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.*; *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied); *see also Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.) (trial court's conclusions of law are independently evaluated to determine whether trial court correctly drew legal conclusions from facts). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502.

## II. Constructive Eviction – Wrongful Eviction

In her first issue, Landlord urges the trial court erred in finding Tenant had been constructively evicted because no pleading supports the finding. In her fourth issue, Landlord contends the evidence is legally insufficient to establish Tenant was wrongfully evicted. While the trial court made factual findings Tenant had been constructively evicted and was wrongfully evicted, it did not render judgment on this basis. Rather, it rendered judgment in favor of Tenant on her breach of contract claims. Therefore, without reference to the merits of Landlord's first and fourth issues, we overrule same as a determination thereon would have no practical effect on the appeal. TEX. R. APP. P. 47.1.

## III.  Breach of Contract

In her second issue, Landlord contends the evidence is legally insufficient to support the trial court's finding she breached the lease agreement by failing to keep the building in good repair and by violating the quiet enjoyment provision of the lease agreement.

To prove a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) the plaintiff's damages as a result of the breach. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.).

It is undisputed that the Commercial Lease Agreement was a valid contract to which Landlord and Tenant were parties.  It is further undisputed that Section XIV of the Commercial Lease Agreement titled "MAINTENANCE" provided:

> Landlord shall be responsible for maintaining the Premises in good repair at all times during the term of this lease less consumables such as light bulbs.

And Section XXI of the Commercial Lease Agreement titled "QUIET ENJOYMENT" provided:

> During the term of the Lease Agreement, the Landlord and Tenant have the right and quiet enjoyment of the Premises.  Tenant shall not create excessive noise or other conditions to render Landlord's occupation of the second floor unenjoyable.

With respect to the trial court's finding Landlord breached the maintenance provision of the Commercial Lease Agreement by failing to maintain the leased premises in good repair, Tenant testified cat urine dripped from Landlord's residential unit above the store into the store and onto the yarn, damaging same, and interfering with her ability to conduct business from the lease premises. Landlord claimed the stains were from condensation dripping from the air conditioning units into the lower floor of the building. Photographic evidence of stains from the dripping substance were in evidence. Thus, the evidence established a substance was dripping into the leased premises, damaging property and interfering with Tenant's business. This evidence constitutes more than a scintilla of evidence to support the trial judge's finding Landlord breached Section XIV of the Commercial Lease Agreement. *See Fulgham*, 349 S.W.3d at 157.

With respect to the trial court's finding Landlord breached the quiet enjoyment provision of the Commercial Lease Agreement, Landlord contends, because the elements of the implied covenant of quiet enjoyment are the same as the elements of constructive eviction, Tenant had to prove (1) Landlord intended that Tenant no longer use and enjoy the premises, (2) Landlord committed a material act that substantially interferes with the tenant's intended use and enjoyment of the premises, (3) the material act must permanently deprive Tenant of the use and enjoyment of the premises, and (4) the tenant must abandon the premises within a reasonable time after the material act is committed. *See Metroplex Glass Ctr., Inc.*

*v. Vantage Props., Inc.*, 646 S.W.2d 263, 265 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (setting forth elements of constructive eviction). As an initial matter, we note Tenant prevailed on her claim Landlord breached the quiet enjoyment provision of the Commercial Lease Agreement, not on an implied covenant of quiet enjoyment. The parties did not present any evidence the quiet enjoyment provision of the lease was intended to replicate the implied covenant of quiet enjoyment with a contractual provision. Thus, we conclude, to prevail on her claim Landlord breached Section XXI of the Commercial Lease Agreement, Tenant had to prove Landlord interfered with her right to quiet enjoyment of the premises and did not have to prove all of the elements of constructive eviction, as required to prevail on a claim of violation of the implied covenant of quiet enjoyment.

In that regard, Tenant provided testimony and photographic evidence establishing Landlord had placed over 60 boxes and bags within the leased space, blocking aisles and interfering with Tenant's business operations. Tenant testified about Landlord's interference with security cameras and presented pictures and videos of same and recordings Landlord made of Tenant's private conversations. In addition, Tenant testified Landlord would turn the power off to the leased space, delaying Tenant's opening of the store. Tenant also testified about Landlord's constant harassing conduct, including making disparaging remarks about Tenant while customers were present. Videos showing Landlord's conduct were admitted into evidence. We conclude this evidence constitutes more than a scintilla of

evidence and supports the trial judge's finding Landlord breached Section XXI of the Commercial Lease Agreement. *See Fulgham*, 349 S.W.3d at 157; *see also Fabrique, Inc. v. Corman*, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990, writ denied) (indicating harassing incidents may disturb the tenant's peaceful possession of premises).

Moreover, even if the contractual quiet enjoyment provision mimicked the implied covenant of quiet enjoyment, the trial judge found Landlord constructively evicted Tenant, and, the evidence identified above satisfies the first three elements of constructive eviction as the evidence established Landlord's intentional harassment and interference was persistent and constantly deprived Tenant of the use and enjoyment of the leased space. *See, e.g.*, *Steinberg v. Med. Equip. Rental Servs., Inc.*, 505 S.W.2d 692, 697 (Tex. App.—Dallas 1974, no writ) (sufficient evidence to support essential allegations concerning constructive eviction when it appeared situation would not be corrected and appellee concluded he could not do business under those circumstances). With respect to abandonment of the premises within a reasonable time after the commission of the act, we note that Texas law does not recognize any specific time period as constituting a reasonable time as a matter of law. *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 872 (Tex. App.—Dallas 1989, writ denied). Instead, whether a tenant abandons the premises within a reasonable time is generally a question of fact. *Id.* Reasonableness depends on the facts and circumstances of the particular case. *See Downtown Realty, Inc. v. 509*

*Tremont Bldg., Inc.*, 748 S.W.2d 309, 311 (Tex. App.—Houston [14th Dist.] 1988, no writ). Thus, it is an issue particularly well-suited to the factfinder. *See Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792, 800 (Tex. App.—Dallas 2012, pet. denied) (questions of reasonableness are inherently issues for the factfinder). Here, the record establishes that part of Tenant's tenancy was during the COVID-19 pandemic when businesses were restricted in how they could conduct business and that Tenant decided to purchase a property, which arguably could impact the time to abandon the premises. Under these unique circumstances, we cannot conclude the trial judge erred in impliedly concluding Tenant vacated within a reasonable period of time. To the extent a showing of constructive eviction was required to establish a breach of the quiet enjoyment provision of the Commercial Lease Agreement, we conclude the evidence was legally sufficient to support the trial court's finding. *See Fulgham*, 349 S.W.3d at 157; *see also Lazell v. Stone*, 123 S.W.3d 6, 12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In her third issue, Landlord asserts the trial court erred in finding the breaches of the lease agreement by Tenant were not material. Landlord contends Tenant's failure to timely provide proof of insurance and failure to receive Landlord's permission to install security cameras were material breaches of the Commercial Lease Agreement.

Paragraph XII of the Commercial Lease Agreement titled "PROPERTY INSURANCE" provides, in part:

Landlord and Tenant shall each maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant's insurance shall be an amount not less than $50,000 (fifty thousand dollars). Landlord shall be named as an additional insured party on any and all such policies. Tenant shall deliver evidence to Landlord as proof of adequate insurance in force issued by companies reasonably satisfactory to Landlord.

Paragraph VII of the Commercial Lease Agreement titled "USE OF PREMISES" provides, in part:

Tenant makes no modifications to the fixtures, layouts, or building premises without the Landlord's permission.

The law is well settled that a material breach by one party excuses performance by the other party. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). Thus, the question presented is whether, based on the evidence presented, the trial court erred in finding Tenant's alleged breaches of the PROPERTY INSURANCE and USE OF PREMISES provisions were not material breaches of the agreement excusing Landlord's performance.

As an initial matter we note that the evidence established the cameras Tenant installed where not affixed to the building. They were simply placed on shelves or counters. Accordingly, Tenant did not violate the provision prohibiting modifications to the fixtures, layouts, or building premises without Landlord's permission by installing same. *See Fixture*, BLACK'S LAW DICTIONARY (11th ed. 2019) (fixture defined as "[p]ersonal property that is attached to land or a building

–17–

and that is regarded as an irremovable part of the real property, such as a fireplace built into a home.").

Whether Tenant's failure to timely provide Landlord with proof of insurance was a material breach is ordinarily a question of fact to be determined based on several factors, including the following:

(a) The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) The extend to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; and

(e) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 241; *Mustang Pipeline*, 134 S.W.3d at 199.

A court's primary consideration in determining the materiality of a breach is the extent to which the other party will be deprived of the benefit it reasonably could have anticipated had the breach not occurred. *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994). The less the other party is deprived of the expected benefit, the less material the breach. *Id.* Landlord does not contend she was deprived of an expected benefit; she contends that by failing to timely provide proof of

insurance, Tenant failed to conform with standards of good faith and fair dealing, only one of the relevant factors. Moreover, the evidence showed Tenant ultimately complied with the insurance provision. Accordingly, we conclude more than a scintilla of evidence exists to support the trial court's finding Tenant's failure to provide proof of insurance was not a material breach of the Commercial Lease Agreement. *See Fulgham*, 349 S.W.3d at 157. We overrule Landlord's third issue.

## IV. Damages

In her fifth issue, Landlord asserts the trial court erred in awarding Tenant damages because she should not have prevailed on her breach of contract claim and, in addition, the evidence of damages was speculative and factually and legally insufficient. We have already resolved Landlord's legal sufficiency complaints concerning the trial court's breach of contract findings against her and given our disposition of this issue on the sufficiency of the evidence of damages, we need not address the separate issue of the factual sufficiency of the evidence to support the breach of contract findings. TEX. R. APP. P. 47.1. Thus, we limit our discussion here to Landlord's contention Tenant did not present competent evidence of damages.

With respect to damages in breach of contract cases, the general rule is that "the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed." *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex. App.—Dallas 1980, no writ) (citation omitted). Put another way, in a breach of contract case, the normal measure of damages is just

compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain. *See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 325 n.6 (Tex. App.—Dallas 2004, no pet.).

The damages the trial court awarded were predicated on Tenant's evidence concerning the difference in the market rental value for the space Tenant occupied upon leaving the leased premises and the rent she would have paid had she remained in the leased premises for the entire term of the Commercial Lease Agreement. In calculating these damages, Tenant had to establish the fair market rental value of same. *See City of Austin v. Teague*, 570 S.W.2d 389, 395 (Tex. 1978); *Wood v. Kennedy*, 473 S.W.3d 329, 338 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001)).

The rental value of property must be established with reasonable certainty. *Teague*, 570 S.W.2d at 395. Under the "Property Owner Rule," a property owner may testify to the value of his property, including the rental value.[2] *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012); *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 677 (Tex. App.—Austin 2003, pet. denied). The rule creates a rebuttable presumption that a landowner is personally familiar with his

---

[2] The Property Owner Rule falls under Texas Rule of Evidence 701, which allows a lay witness to provide opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or the determination of a fact issue. *Justiss*, 397 S.W.3d at 157 (citing TEX. R. EVID. 701).

property and knows its fair rental value and, thus, is qualified to express an opinion about that value. *Wood*, 473 S.W.3d at 336. As such, the property owner is permitted an exception to the general rule that a witness must first establish his qualifications to opine on property values before he may testify. *Justiss*, 397 S.W.3d at 157.

Nevertheless, to be admissible, a qualified owner's testimony must still meet the same requirements as any other opinion evidence. *Id.* at 156. An owner's valuation testimony must be relevant. *Wood*, 473 S.W.3d at 337. An owner's valuation testimony is not relevant if it is conclusory or speculative. *Id.* As with expert testimony, property valuations may not be based solely on a property owner's *ipse dixit*. *Justiss*, 397 S.W.3d at 159. That is, the property owner "may not simply echo the phrase 'market value' and state a number to substantiate his [valuation]." *Id.* His subjective opinion, by itself, will not provide relevant evidence of value. *Id.* Instead, to be relevant, the witness "must provide the factual basis on which his opinion rests." *Id.* "Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors [here possibly rent per square foot for comparable commercial properties] may be offered to support the [valuation]." *Id.* Even if unchallenged, the testimony must support a determination, and conclusory or speculative statements do not. *Id.*

In support of the measure of damages the trial court awarded, Tenant calculated the amount of rent she would have paid to Landlord for the remaining

lease term, based upon historical data, and compared that to the fair market rent she would pay for the property she purchased for that same period of time, to arrive at her damage calculation of $50,642.16. With respect to the fair market rental value of the property Tenant purchased, the testimony concerning same was limited to the following:

Q. For you to rent that space that you have now - - if you were to have it for rent, what would be the market rent for that space be?

A. 3,500 to 5,000 a month.

While Tenant may have been qualified to testify about the fair market rental value of the building she purchased, she did not provide a proper factual basis to support her valuation. When, as here, the evidence does not indicate the factual basis behind the witness's valuation, such evidence is legally insufficient to sustain a judgment regarding the reasonable rental value of property. *See Justiss*, 397 S.W.3d at 159. We sustain Landlord's fifth issue.

Having sustained Landlord's fifth issue, we must determine whether it is appropriate to render judgment or remand the case for a new trial. Here, the market rental value of the property Tenant purchased was a component of the measure of Tenant's damages. The other component was the rent she would have paid to Landlord had she remained in the leased space. The evidence established Tenant was afforded a reduced rental rate under the Commercial Lease Agreement. Because of Landlord's breaches of the Commercial Lease Agreement, Tenant did not obtain

the benefit of the reduced rent for the entire term of the agreement. Thus, while the evidence is legally insufficient to support the damages awarded in the amount of $50,642.16, there is some evidence Tenant suffered damage as a result of Landlord's breaches.

When there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). In this situation, we may remand to the trial court for a new trial. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998) (holding appellate court can remand for new trial when no evidence supports damages awarded but there is evidence of some damages); *see also A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 616 (Tex. App.—Dallas 1990, writ denied) (finding that, although plaintiff did not prove its damages with reasonable certainty, there was some evidence of damages generally, and interests of justice, therefore, required remand for new trial). Because liability is contested in this case, we cannot order a new trial solely on the issue of unliquidated damages. *See* TEX. R. APP. P. 44.1(b) (appellate court may not order a separate trial on unliquidated damages if liability is contested). Accordingly, here, we will remand this case for a new trial on liability and damages.

## CONCLUSION

We reverse the trial court's judgment awarding Tenant damages and attorney's fees on her breach of contract claim, remand for a new trial on Tenant's breach of contract claim and affirm the judgment in all other respects.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

230135F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DIANE PIWKO, Appellant

No. 05-23-00135-CV        V.

STACEY ACEVEDO, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-05314-2019.

Opinion delivered by Justice Kennedy. Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding appellee breach of contract damages and attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of June 2024.